UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

LUCRETIA SCOTT,

                             Plaintiff,

                                                               DECISION and ORDER

  -vs-

                                                               22-CV-6280

GENERAL MOTORS COMPONENTS
HOLDING LLC Labor Relations Department,

                             Defendant.
_____

       Plaintiff Lucretia Scott commenced this action in 2022 by filing a *pro se* complaint against her employer, General Motors Components Holdings LLC ("GM"). On the form discrimination complaint, plaintiff checked the boxes indicating that she was asserting claims under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act ("ADA"), and the New York State Human Rights Law ("HRL").

       After GM answered the complaint, plaintiff moved for leave to file an amended complaint, which the Court granted. (Dkt. #24.) The amended complaint (Dkt. #25) amplifies the factual basis of plaintiff's ADA claims, which allege unlawful harassment, retaliation, and failure to accommodate her disability, but it does not assert any claims under Title VII or the HRL.

       GM has now filed a motion for summary judgment (Dkt. #43), and plaintiff has filed what is captioned as a motion for summary judgment (Dkt. #49), although from its substance it appears to be more in the nature of a response to GM's motion.

       The Court heard oral argument on the motions on November 25, 2024, at which plaintiff and counsel for defendant appeared. Having reviewed the entire record, and considered the statements

of both sides made at oral argument, the Court grants defendant's motion, denies plaintiff's motion, and dismisses the complaint.

## BACKGROUND

The facts relating to plaintiff's claims are set forth in the amended complaint ("complaint" or "AC"), the exhibits submitted by both parties, and the factual assertions agreed to by both sides at oral argument. While the record in this case is substantial–plaintiff's deposition transcript and exhibits alone total 859 pages–the salient facts are summarized here. All facts recited here are undisputed, unless otherwise noted.

Plaintiff was hired by GM to work at one of its facilities in Rochester, New York in 2006. Scott Deposition Transcript ("Tr.") (Dkt. # 43-3 pp. 2-37) at 16. She alleges that on August 13, 2018, she fell at work and injured her left foot. (AC at 5.) At the time, she alleges that she was "[w]orking on [a] machine." Tr. at 73. She testified at her deposition that she was "an A-level ... team member" at the time, and that she "had to go inside [the] machine to change parts inside the machine ... ."

The next day, plaintiff was seen by a physician, James Tacci, M.D., who stated that plaintiff would need to use crutches and could only perform sedentary work. Plaintiff states that she was "taken out of work" on August 14 by a nurse employed by GM. AC at 5. Apparently at GM's request, Dr. Tacci sent GM a work status summary on June 4, 2019 diagnosing plaintiff with complex regional pain syndrome ("CRPS") in her left foot, and stating that she was limited to sedentary work with occasional ten-minute breaks. *Id.*

Plaintiff testified at her deposition that she did not return to work until June 2021, approximately 34 months after her fall on August 13, 2018. Tr. at 73. According to the complaint, plaintiff had requested to be returned to work a few months earlier, in March 2021. (AC at 6.)

When she returned in June 2021, plaintiff was assigned to work as an A-Level team member. Tr. at 21. She subsequently requested to be "reduced back to a production worker," *id.*, because production work was less physically strenuous, although she knew that the change would reduce her pay. Tr. at 22 45. GM granted that request. Tr. at 22.

On November 2, 2021, plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"). (Dkt. #43-3 at 120.) On the form, plaintiff checked a box indicating that she was alleging discrimination based on disability. In the space for explaining the basis for the charge, plaintiff wrote, "On September 29, 2021 Labor Relations called me to there office [sic] to write me up with a Doc. 8. It stems from labor relations losing my vacation paperwork." (Dkt. #43-3 at 120.)[1]

When plaintiff was asked about this charge at her deposition, she stated that the claimed disability was CRPS. Tr. at 27. As for the factual basis, she testified that after she returned to work in June, she put in paperwork to use vacation days for the week of July 4, and that she did take that time off. Plaintiff testified that "everything was fine" until September, when she was called in to the labor relations department. Plaintiff was told that she had not been approved to take time off in July (which she disputed), and was issued a reprimand.

Plaintiff filed a grievance over the matter stating that she was "protest[ing] mgmt not keeping records of [her] vacation slip," in violation of a shop rule. (Dkt. 43-3 at 137.) The grievance made

---

[1] At oral argument, plaintiff explained that a "Doc 8" is a disciplinary write-up.

no mention of any disability or discrimination. The grievance form indicates that it was resolved on October 29, 2021–four days *before* plaintiff filed her EEOC charge–with an acknowledgment that management would abide by the provisions in the collective bargaining agreement relating to vacation time and that the reprimand would be removed from plaintiff's personnel file. *Id.*

On or about February 23, 2022, plaintiff injured her foot again. Tr. at 74. She testified that this occurred because her physical "restrictions were taken off" and she "hurt [her] foot doing a job that conflicted with [her] restrictions." *Id.* Plaintiff stated that her supervisor had directed her "to do a job ... that had [her] mopping, sweeping, pulling carts, pushing carts, putting certain pieces of product away that was strenuous to [her] body." Specifically, she stated that at certain times she would have to lift a bucket filled with water, and to pull up heavy mats from the floor, and that the heavy lifting caused her foot to become swollen and painful. Tr. at 79-81. Plaintiff reported the injury the next day, and immediately was placed on medical leave. Tr. at 84.

As noted in the Court's Order (Dkt. #62) issued in advance of oral argument, it was unclear from the record whether plaintiff had returned to work at some point after that second injury. At oral argument, the parties clarified and confirmed that she had returned to "light duty" work in August 2023, where she continues to this day.

In her prayer for relief in the amended complaint, plaintiff states that she seeks "to return back to work without being retaliated against, nor harassed," "to be accommodated for [her] disability," and "to be compensated for the physical, and emotional distress that has been caused against" her. (AC at 4.)

**DISCUSSION**

**I. ADA Claims:  General Principles**

As stated, plaintiff asserts three types of claims under the ADA:  for unlawful harassment, retaliation, and failure to accommodate her disability.  An evaluation of the merits of her claims requires familiarity with the standards applicable to each.

To establish a claim for denial of a reasonable accommodation in violation of the ADA, a plaintiff must first make out a prima facie case by establishing that:  (1) she is a person with a disability within the meaning of the ADA; (2) an employer covered by the statute had notice of her disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.  *Williams v. MTA Bus Co.*, 44 F.4th 115, 125 (2d Cir. 2022) (citing *McBride v. BIC Consumer Products Manufacturing Co.*, 583 F.3d 92, 96-97 (2d Cir. 2009)).

A reasonable accommodation is one that will "enable an individual with a disability who is qualified to perform the essential functions of that position."  29 C.F.R. § 1630.2(o)(1)(ii).  An employer is not required to provide the particular accommodation that an employee specifically requests or prefers; what is required is that the employer provide an appropriate and effective accommodation.  *See Noll v. IBM*, 787 F.3d 89, 94-95 (2d Cir. 2015).  The Second Circuit "has held that 'the determination of whether a particular [accommodation] is "reasonable" involves a fact-specific, case-by-case inquiry that considers, among other factors, the effectiveness of the [accommodation] in light of the nature of the disability in question.'"  *Doe v. Franklin Square Union Free School District*, 100 F.4th 86, 99-100 (2d Cir. 2024) (quoting *Mary Jo Co. v. N.Y. State & Loc. Ret. Sys.*, 707 F.3d 144, 153 (2d Cir. 2013) (brackets in original).

To survive summary judgment on a failure-to-accommodate claim, then, the plaintiff must present evidence upon which a jury could determine that each of the elements of the claim has been proven. *See Fox v. Costco Wholesale Corp.*, 918 F.3d 65, 73 (2d Cir. 2019). The plaintiff "bears the burdens of both production and persuasion as to the existence of some accommodation that would allow her to perform the essential functions of her employment." *McBride*, 583 F.3d at 97. *See also Geer v. Gates Chili Central Sch. Dist.*, 577 F.Supp.3d 147, 167 (W.D.N.Y. 2021) (reciting standards).

Plaintiff's claim that she was subjected to harassment in violation of the ADA is effectively a claim that she was subjected to a hostile work environment. The Second Circuit has held that such claims are actionable under the ADA. *Fox*, 918 F.3d at 74. To state such a claim, a plaintiff must allege facts showing that she was subjected to harassment "sufficiently severe or pervasive to alter the conditions of her employment and create an abusive working environment," and "that a specific basis exists for imputing the objectionable conduct to the employer." *Id.* The plaintiff must also allege either a single incident that was extraordinarily severe, or a series of incidents that were sufficiently continuous and concerted to have altered the conditions of her working environment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21(1993); *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 570 (2d Cir. 2000).

To state a hostile work environment claim under the ADA, "[t]he plaintiff must also allege facts suggesting that the harassing conduct was motivated by animus directed at [her] disability." *Hendrix v. Pactiv LLC*, 488 F.Supp.3d 43, 53 (W.D.N.Y. 2020) (quoting *Zako v. Encompass Digital Media, Inc.*, No. 19-CV-844, 2020 WL 3542323, at *13 (D. Conn. June 30, 2020)); *see also Sosa v. N.Y.C. Dep't of Educ.*, 368 F.Supp.3d 489, 525 (E.D.N.Y. 2019) (stating with respect to the

plaintiff's hostile work environment claim that the plaintiff "has failed to allege that the abusive incidents were because of any disability that she had. This claim, therefore, must be dismissed").

ADA "[c]laims for retaliation are analyzed under the same burden-shifting framework established in Title VII cases." *Hazelwood v. Highland Hosp.*, No. 14-CV-6421, 2017 WL 5904763, at *6 (W.D.N.Y. Nov. 30, 2017) (citing *Lovejoy-Wilson v. Noco Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)). To state an ADA retaliation claim, an employee "must show that [s]he engaged in a protected activity, that [s]he suffered an adverse employment action, and that a causal connection exists between that protected activity and the adverse employment action." *Fox*, 918 F.3d at 72-73. With respect to causation, a plaintiff must prove that "but for" the protected activity, "the adverse action would not have been taken." *Tafolla v. Heilig*, 80 F.4th 111, 125 (2d Cir. 2023) (quotation marks omitted).

Once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the challenged employment decision. If the defendant does so, the plaintiff must identify evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation, and that such retaliation was the real reason for its actions. *See Natofsky v. City of N.Y.*, 921 F.3d 337, 353 (2d Cir. 2019); *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002).

**II. Failure to Accommodate**

For purposes of its summary judgment motion, defendant concedes it is subject to the ADA and that Scott's CRPS qualifies her as "disabled" within the meaning of the ADA. *See* Def. Mem. (Dkt. #43-1) at 5 n.5. Defendant contends, however, that plaintiff's claim fails on the third and

fourth elements, because there is no evidence in the record demonstrating: that plaintiff could perform the essential functions of her A-Level job with or without reasonable accommodation; that she suffered an adverse employment action due to her disability; that defendant's decision to put plaintiff on a continued leave of absence was a pretext for disability discrimination; or that defendant treated plaintiff differently from similarly situated employees with respect to workplace accommodations.

In addition, defendant also asserts that it has reasonably accommodated plaintiff, as a matter of law, by placing her on a leave of absence with full pay and then allowing her to return to work in a job that is consistent with her physical restrictions.

The first question before the Court, then, is whether there is evidence in the record from which a factfinder could conclude that with reasonable accommodation, plaintiff could perform the essential functions of her job. Before one can answer that question, however, it is necessary to identify the relevant job.

As stated, plaintiff has worked in different jobs over the years. When she returned to work from her first injury in June 2021, plaintiff was assigned to work as an A-Level team member, but at her request she was changed to production work, which she also described at oral argument as "sorting work." She alleges that at some point, "the restrictions [on her duties] were taken off" by GM, and she re-injured her foot. Tr. at 74.

Since plaintiff again returned to work in August 2023, she has been performing light-duty work. She stated at oral argument that she came back as an A-level worker, but at her request was reclassified as a B-level employee, which involves less strenuous work. By her own admission, then,

plaintiff was not physically capable of performing the duties required in her former job as an A-level worker.

Plaintiff stated that as a B-level worker, she is not expected to get inside large machines to maintain and repair them, as she did when she was an A-level employee. She also agreed, at least "to some point," that defendant is currently accommodating her by allowing her to continue working in a light-duty role.

In any event, whichever job one considers, the record demonstrates that defendant has reasonably accommodated plaintiff. There is no dispute that there were times when she was physically unable to work at all, and at those times defendant placed her on paid medical leave. "[C]ourts have found that medical leave ... constitutes a reasonable accommodation under the ADA." *Yager v. County of Erie*, No. 21-CV-68, 2025 WL 219113, at *11 (W.D.N.Y. Jan. 16, 2025) (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 n. 6 (2d Cir. 2006) (collecting cases)). "In particular, 'a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work.'" *Id.* (quoting *Graves*, 457 F.3d at 186 n.6). In fact, even *unpaid* medical leave can constitute a reasonable accommodation; plaintiff here received full pay throughout her leave. *See Cavienss v. Norwalk Transit*, No. 21-cv-1694, 2024 WL 4198224, at *8 (D.Conn. Sept. 16, 2024) ("I follow most courts in this circuit and other circuits in finding that an unpaid leave of absence can constitute a reasonable accommodation, provided that it is of limited duration").

Eventually, of course, plaintiff did return to work, and she conceded at oral argument that her current job duties are consistent with her physical limitations. It appears, however, that for a time it was not known when or even if plaintiff would be able to resume work, and if anything defendant

was remarkably accommodating by granting her a lengthy period of paid leave. *See Desiderio v. Hudson Tech., Inc.*, No. 22-cv-541, 2024 WL 4026260, at *15 (S.D.N.Y. Sept. 3, 2024) ("[w]here there is no indication of when an employee will return, an employer has no obligation to grant an employee an indefinite leave of absence") (qutoing *Caytano v. Fed. Express Corp.*, No. 19 Civ. 10619, 2022 WL 2467735, at *6 (S.D.N.Y. July 6, 2022)).

It is evident from the record that plaintiff herself has not demonstrated how defendant's efforts to accommodate her have fallen short, or explained what defendant should have done differently. At her deposition, plaintiff stated that when she returned to work after her first injury, "I wanted them [defendant] to acknowledge my disability. That's what I wanted them to do, acknowledge my disability." Tr. at 132. Plaintiff has never adequately explained what it means to "acknowledge" her disability, however, or how defendant failed to do so.

Plaintiff appears to allege that her second injury was the result of being assigned tasks that exceeded her physical limitations, but she has not presented evidence sufficient to demonstrate a genuine issue of fact in that regard. In an answer to written interrogatories from defendant, plaintiff stated that when she returned to work in 2021, she had several physical restrictions that had been put in place by her medical providers. She added that on "Jan 10, 2022, Stacey Pynn (Medical practitioner for GM) took Plaintiff restrictions off and Talee Kehlenbeck (MP for General Motors) kept the restrictions off on 2/8/2022 which resulted in Plaintiff experiencing another injury at work on 2/24/2022." (Dkt. #43-3 at 91.)

At her deposition, however, plaintiff testified that when she first returned to work, she "was an A-level team member, but [she] put in paperwork to be reduced back to a production worker" because of the effects of her prior injury. Tr. at 21. Defense counsel asked, "Did the paperwork

include information from your doctors?," to which plaintiff responded "No." She stated that "it was [her] personal request." *Id.* That request was granted by defendant. *Id.* at 22.

Plaintiff testified that she did speak with her supervisor about her restrictions to let him know that she was not supposed to lift more than ten pounds. *Id.* at 53. She also stated that what led to her second injury was that on February 23, 2022, he directed her to do work that involved occasionally lifting water-filled mop buckets, which she was certain weighed more than ten pounds. *Id.*

Plaintiff stated that when she felt pain trying to lift the buckets, she did not immediately tell anyone because her supervisor and the foreman had left for the day. *Id.* at 82. She stayed for the remainder of her shift, but did no more work that day. *Id.* at 82. She reported the injury the next day, and that same day again went on medical leave, which continued until she returned in 2023. *Id.* at 84.

Later in her testimony, plaintiff stated that from the time she first returned to work in June 2021 until February 2022, she had never been asked to perform any tasks that conflicted with her restrictions. *Id.* at 103. Up until just prior to her second injury, she had been doing light-duty jobs. *Id.* at 104. In other words, the date of her second injury was the first time since her return to work that anyone had asked to do a job that was inconsistent with her physical restrictions.

There is no evidence, then, that defendant failed or refused to provide plaintiff with reasonable accommodations, much less that her second injury was caused by such failure. From the evidence, the injury appears to have happened after her supervisor on one occasion gave plaintiff a job to do that involved lifting some buckets; when she did so, she felt pain and stopped working, and the next day she was again placed on medical leave. As is true of any injury, that was an unfortunate

occurrence, but it was not the result of a failure on defendant's part to reasonably accommodate plaintiff's medical needs.

In the wake of both her injuries, defendant placed plaintiff on paid medical leave, for extended periods; in fact, for several years. That, too, was a reasonable accommodation.

"District courts in this Circuit have concluded a temporary *unpaid* leave of absence can be a reasonable accommodation." *Cavienss v. Norwalk Transit*, No. 21-cv-1694, 2024 WL 4198224, at *8 (D.Conn. Sept. 16, 2024) (emphasis added). If unpaid leave is adequate, *a fortiori* paid leave, which plaintiff received, can be as well. *See Yager*, 2025 WL 219113, at *11 ("a leave of absence may be a reasonable accommodation where it is finite and will be reasonably likely to enable the employee to return to work") (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 186 n.6 (2d Cir. 2006)).

In the case at bar, defendant allowed plaintiff to remain on paid medical leave for lengthy periods, twice. Arguably, defendant was not even required to do that much; courts have held that it is unreasonable for an *employee* to demand an indefinite leave of absence with no end in sight. *See Washington v. Enterprise Leasing Co. of Chicago, LLC*, No. 24-2301, 2025 WL 500215 (7th Cir. Feb. 14, 2025) ("Enterprise was also not required to allow Washington an indefinite leave of absence; an extended leave for multiple months is not a reasonable accommodation under the Act").

That is not to say that it is necessarily reasonable for an employer to keep an employee on medical leave, against the employee's will, when the employee wants and is physically able to return to work. But that did not happen here. Defendant had before it medical evaluations indicating that plaintiff had significant physical limitations, and the record before the Court demonstrates that she was not in fact able to meet the demands of her prior job.

At her deposition, taken on August 4, 2023, plaintiff testified regarding her physical limitations. She stated, "[T]here's not a lot I can do, not with my condition." She stated that she did not do any household chores and that she could not walk around the block. She stated, "I'm mostly home. I don't do any activities." (Tr. at 84-87.)

Notably, that testimony was given just ten days before plaintiff returned to work on August 14, 2023. It is obvious, then, that she continued to deal with significant physical limitations even at that time. In light of those limitations, it was certainly reasonable for defendant to conclude that plaintiff could not perform the essential functions of her previous job.

At explained above, when she returned to work after her first injury in 2021, plaintiff was restored at her prior job as an A-level team member, but at her request her job level was reduced to less strenuous work, to accommodate her needs. She explained at oral argument that A-level work involved literally going into large machines to fix problems, and that B-level work was much less physically demanding. She also testified at her deposition that she willingly took a pay cut to switch to B-level work. Tr. at 22.

Clearly, then, plaintiff was unable to perform the essential functions of her prior job following her first injury, and apparently she has never recovered the physical ability to do so. It was entirely reasonable, therefore, for defendant to keep her on paid medical leave until she could resume work in some capacity. It was likewise reasonable to again put plaintiff on medical leave after her second injury. Plaintiff acknowledged at oral argument that she was later returned to light work, which is consistent with her current restrictions.

From her statements at oral argument, it appears that plaintiff was dissatisfied with how long it took her to be returned to work. But the Court is aware of no authority suggesting that an

employee recovering from an injury, who has significant physical limitations, can demand to return to work by a particular date. While "the ADA envisions an 'interactive process' by which employers and employees work together to assess whether an employee's disability can be reasonably accommodated," *McBride*, 583 F.3d at 99 (citations omitted)), that does not mean that the employee has an enforceable right to move the process along in a particular way or on a particular timeline. Even if the employer does not participate in that process to the extent wished by the employee, "an employer's failure to comply with the interactive-process requirement does not provide the basis for an independent cause of action under the ADA." *Williams,* 44 F.4th at 135.

Aside from these matters, plaintiff has sought to inject other disputes with defendant into this case, that are unrelated to her ADA claim and are not cognizable under the ADA. At oral argument, plaintiff stated that the department where she works has been going through staffing cuts, and that she has thus far unsuccessfully sought transfer to a different department. Defense counsel acknowledged as much, but said that transfer was not a simple matter, because of other employees' seniority rights, which give them priority under the applicable collective bargaining agreement ("CBA") (Dkt. #43-3 at 140). Although plaintiff disputes the accuracy of that assertion, these matters are not pleaded in the complaint and there is no evidence that they are related to her claims of disability discrimination under the ADA.

**III. Harassment and Retaliation**

Plaintiff has also asserted claims of unlawful harassment and retaliation for her complaints of disability discrimination. The evidence before the Court fails to support those claims.

With respect to harassment, plaintiff complains about a dispute she had with defendant over vacation time she took in July 2021. Apparently defendant contended that she did not adequately document or obtain prior approval for her time off. Plaintiff contends otherwise. She also testified at her deposition about a time when a member of defendant's Human Resources department shut a door in plaintiff's face as plaintiff was following her into the building. Tr. at 34-35.

Neither of these amounts to actionable harassment. The vacation-time matter appears to be nothing more than a garden-variety dispute of the type that frequently occur in the course of employment, and it was apparently resolved in plaintiff's favor after she filed a grievance through her union. Notably, the dispute was resolved *before* plaintiff filed her EEOC complaint. Nothing about the facts concerning that matter indicates that it was related to her disability.

As for the "door" episode, that is a *de minimis* incident, and the Court finds as a matter of law that it does not rise to the level of unlawful harassment. *See Devita v. Mt. Sinai Hosp.*, No. 22-CV-9826, 2024 WL 3046121, at *8 (S.D.N.Y. June 18, 2024) (plaintiff asserting claim of hostile work environment based on harassment must show that her "workplace is 'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment'") (quoting *Littlejohn v. City of N.Y.*, 795 F.3d 297, 320-21 (2d Cir. 2015)). *See also Fridia v. Henderson*, No. 99 Civ. 10749, 2000 WL 1772779, at *6 (S.D.N.Y. Nov. 30, 2000) ("not every unpleasant matter creates a cause of action").

Under the heading, "Retaliation," the amended complaint sets forth allegations concerning events from 2020 through 2022, *see* Dkt. #25 at 6-8, but they clearly do not involve any acts of retaliation. They essentially recite plaintiff's medical history during that time frame, and are part and

parcel of plaintiff's claims for failure to accommodate. Nothing about them suggests any retaliatory animus on defendant's part.

To defeat a motion for summary judgment, a plaintiff asserting retaliation under the ADA must show that she engaged in an activity protected by the ADA, that her employer was aware of the activity, that the employer took adverse employment action against her, and that there is a causal connection between the adverse action and the protected activity. *See Treglia*, 313 F.3d at 719; *Yager*, 2025 WL 219113, at *12. If the defendant articulates a legitimate, non-retaliatory reason for the challenged action, "the plaintiff must point to evidence that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation." *Cifra v. Gen. Elec. Co.*, 252 F.3d 205, 216 (2d Cir. 2001).

Plaintiff has fallen far short of meeting that burden. As stated, at times she was dissatisfied with the pace of defendant's efforts to get her off medical leave and back to work. But there is no evidence that defendant deliberately dragged its feet or tried to prevent her from returning to work, much less that defendant did so out of retaliatory motives. Even viewing the factual record in the light most favorable to plaintiff, the Court concludes that she has not demonstrated the existence of a genuine issue of material fact as to this claim.

## CONCLUSION

Defendant's motion for summary judgment (Dkt. #43) is granted, plaintiff's motion for summary judgment (Dkt. #49) is denied, and the complaint is dismissed.

IT IS SO ORDERED.


Dated:       February 20, 2025
             Rochester, New York

_____
DAVID G. LARIMER
United States District Judge